

**SO ORDERED.**
**SIGNED this 9th day of June, 2022**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

/s/ Shelley D. Rucker
Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR**
**THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Sarah Courtney Mattoon,** | ) | No. 1:22-bk-10384-SDR |
| | ) | Chapter 13 |
| Debtor. | ) | |

## MEMORANDUM AND ORDER

The Motion for Relief from the Automatic Stay filed by Open Doors Property Management, property manager for the property located at 107 Summit Street, Rossville, Georgia, came on for hearing on June 2, 2022. Counsel for Open Doors, counsel for the debtor, and counsel for the chapter 13 trustee appeared. The court heard the testimony of Mr. Buddy Coppage, employee of Open Doors, and the debtor, Ms. Mattoon.

### I.    Jurisdiction

The court has jurisdiction over the matter under 28 USC 1334(b) and 157(b)(2)(G).

### II.    Findings of Facts

Ms. Mattoon executed a lease with Open Doors on September 1, 2019. A copy of the lease is attached as pages 3–7 to the Motion for Relief from Stay. [Doc. No. 30]. The parties stipulated

1

that it was a correct copy of the lease that they executed. When Ms. Mattoon signed the lease, Open Doors knew that, in addition to Ms. Mattoon, there would be others living in the property. The others included her companion Mr. James Taylor and her two minor children. Mr. Taylor was intended to be a party to the lease but was unavailable the day of the execution of the lease and the deficiency has not been remedied. Open Doors has never notified her that his failure to sign the lease was a default.[1] More recently, Ms. Mattoon informed Open Doors that her mother was moving in with her after the death of her sister who had been caring for her mother. Open Doors did not tell her that her mother moving in would be a default under the lease.

The original term of the lease was for one year. Thereafter, the lease automatically renewed on a month-to-month basis. No written extension of the lease has been executed, and it is now a month-to-month lease. The evidence about whether the lease was terminated prepetition is unclear.

The rent is $950 a month. Ms. Mattoon also provided a $900 security deposit to Open Doors. Based on her proposed chapter 13 plan, Ms. Mattoon is $7,874 in arrears on her rental payments. She proposed to assume the lease and make her current rental payments of $950 through the plan. She proposes to cure the arrearage of $7,874 over 60 months at the rate of $135 a month. Her monthly plan payment is $1,250 a month, paid directly to the trustee. Ms. Mattoon is a Door Dash driver who supplements her income with Social Security and help from her family and companion. Her monthly household income is $4,478.33 according to Schedule I. Since the filing on February 21, 2022, Ms. Mattoon has made three payments and the trustee has $3,325 on hand.

---

[1] The record is not entirely clear on whether Mr. Taylor ever signed the lease. Mr. Taylor filed his own chapter 13 proceeding in August of 2021. He assumed a lease with Open Doors under his confirmed plan. Mr. Taylor filed a plan to pay Open Doors arrearage of $4,700 at rate of $135 a month and his current rent through the plan. Open Doors attached a copy of a lease with his signature, which is otherwise identical to the one attached to the Motion. *In re James Taylor*, Case No. 21-11523 NWW, Doc. No. 19 (His case was dismissed on March 17, 2022, for non-payment) [*Taylor*, Doc. No. 41].

On March 30, 2022, Open Doors filed the Motion on the basis that Ms. Mattoon was in prepetition arrears of $7,874 and had failed to pay post-petition rent $1045.00. [Doc. No. 30]. The motion was set for hearing on April 7, 2022, and was continued by agreement until heard on June 2, 2022. The first meeting of creditors was held on May 3, 2022, and Open Doors did not object on a timely basis to the treatment of the lease under the plan, although it had previously filed this Motion alleging the failure to make the rental payments. The trustee objected to confirmation of the plan for non-payment. This objection is set for July 21, 2022, at 2:30 p.m.

At the hearing, Open Doors offered evidence of additional defaults under the lease. Another adult relative of the tenants is an additional adult living on the property who has not signed the lease. Other non-monetary defaults include failure to maintain the property and making alterations to the property without Open Doors' consent. Mr. Coppage inspected the property in late May and testified that he had noted a strong odor in the house that he believed made the property unhabitable without substantial renovation. Ms. Mattoon admitted that she has pets and children that have created messes in the house, but she has tried to clean up those messes. She testified that she is unaware of any odor. The court notes that she testified that she was using Carpet Fresh and used baking soda when she cleaned up accidents. The court finds that there is a cleaning problem at the property contributing to the purported odor. In addition, Mr. Coppage offered pictures regarding the clutter in other rooms; but the court does not find, based on the pictures of the interior of the home, that the clutter constituted a structural or sanitation problem for the property. There were areas of the house where it was apparent that Ms. Mattoon was trying to keep the house in order but may have been overwhelmed by the number of people in her care.

In the kitchen, the Open Doors had acknowledged a weakness in the floor at the time the property was rented to Ms. Mattoon that was causing the linoleum flooring to crack. Both parties

3

agreed that the Open Doors would make repairs if the problem got worse. Ms. Mattoon testified that it had gotten worse, but she had not made written demand on Open Doors to fix the situation, as required by the lease. Rather than sending a written request for the Open Doors to make the repairs, she had pulled up the linoleum and told the Open Doors that she and Mr. Taylor would fix the flooring. The court finds the removal of the linoleum to be a violation of the terms of the lease, and Ms. Mattoon has assumed the responsibility to fix the floor. She testified that she could repair the flooring with the assistance of her companion within two weeks.

Ms. Mattoon also admitted that a window had been broken accidentally. She intended to fix the window but had not done so. She admitted that the repair was her responsibility and that she had consulted with Open Doors about using plexiglass to make the repair.

As for the outside of the property, Mr. Coppage offered pictures of its condition. There was general clutter around the property which included trash such as pizza boxes and plastic soda bottles. Ms. Mattoon also admitted to letting her dogs tear up toy stuffed animals and leave the stuffing in the yard. Ms. Mattoon also has a discarded washing machine outside her home. The court finds that the condition of the property from the outside is not in compliance with the lease requirements and needs to be cleaned up. The property reflects a general neglect by the tenants, but the problems are such that the family themselves could make a significant improvement in the condition and appearance of the property without having to consult a professional waste disposal company. Open Doors admitted that he had not sent the tenants a notice of default with respect to these issues and had first discovered them in his May inspection. The court finds that paragraph 13(B) of the lease provides that material non-compliance with the rental agreement may give rise to damages which may be claimed by the lessor and requires the breach to be remedied in 14 days after notice. The lease does not expressly address a cure period for non-monetary defaults and

seems to indicate that payment of damages or termination are the only options. For purposes of considering confirmation (including the approval of the assumption of the lease), the court will consider at the final hearing whether the non-monetary defaults have been cured.

Ms. Mattoon testified about problems with the property that made her compliance more difficult, the foremost of which was the lack of air conditioning. She admitted that she had not sent a written request for a repair but that she had verbally informed Open Doors of the problem. She testified that the air conditioning stopped working approximately nine months ago when a tree fell on the property. She was unclear whether the tree fell on the air conditioner. No rebuttal proof was offered by Open Doors. The court finds the unit stopped working last fall and would not have been needed until recently after Ms. Mattoon had filed bankruptcy and was attempting to cure a significant rental arrearage. The timing and her financial defaults likely made the communication between the parties even worse.

The court finds that both parties to the lease have non-monetary defaults existing under the lease. Both sides have been provided of notice of those defaults as a result of the testimony at the hearing. Actions need to be taken to make efforts to cure the defaults pending the final hearing or the court will address the parties' rights under the lease if the defaults remain uncured.

Ms. Mattoon has offered the payment of two months rent from the funds on hand to pay for the months of May and June. The rent for February is being treated as a prepetition arrearage and the court orally ruled that the rent for April and May would be included as pre-petition rent. The court reconsiders that ruling on the basis that Open Doors was not given any opportunity to make a request for an administrative expense for the post-petition period. Even if the lease is ultimately rejected, the use of the property post-petition has benefited Ms. Mattoon and her family. Open

Doors may amend its motion to request that all the post-petition rent due is an actual and necessary expenses of preserving the estate and request that it be allowed as an administrative expense under 11 U.S.C. § 503(b)(1)(A).

Ms. Mattoon offers adequate protection of

1. Immediate payment of the May and June rent from her payments to the trustee.
2. Repair of the window and the the linoleum in the kitchen by the end of June with the selection of the linoleum and installation to be done with the approval of Open Doors, or alternatively provide payment for the repair to Open Doors.
3. Clean up the outside of the property and remove appliances or store them in the storage shed on the property.
4. Execute an amendment to the lease adding Mr. Taylor to the lease subject to Open Doors' consent.

The court finds that Open Doors has consented to the addition of Mr. Taylor and Ms. Mattoon's mother to the lease, but whether the relative's residence at the property is a default will be considered at the final hearing. His addition as a tenant is still subject to the Open Doors' consent under the terms of the lease. The court was not provided information regarding how many bedrooms are in the house. There was testimony that one room could not be used because there were leaks in the roof, and the living room is serving as a bedroom. Open Doors may determine how many additional individuals it is willing to allow to live in the property and whether they can qualify as a tenant. [Lease Agreement, ¶ 25, Doc. No. 30]. Ms. Mattoon may also supplement her

proof at the final hearing should she have evidence that Open Doors also consented to the relative's residing at the house.

### III.  Ruling

The court finds that this offer of adequate protection is sufficient for the court to preliminarily deny the Motion and allow Ms. Mattoon to continue residing in the property until a final hearing. Ms. Mattoon has met her burden and shown that there is a reasonable likelihood that she will prevail at the conclusion of a Final Hearing. 11 U.S.C. § 362(e)(1). The court finds that good cause exists to extend the 60-day period for a final hearing based on the prior agreed continuances and the court's scheduled hearing dates. The court will set a final hearing on the Motion. At that time, the court will expect proof from Ms. Mattoon to confirm that the non-monetary defaults have been cured and specifically that the property has been cleaned up and that the repairs have been made.

The court is issuing a written opinion to clarify its oral ruling. It is concerned that the court's statements changed the terms of the lease. To the extent that they did, the court has reconsidered those aspects of its opinion. The court sincerely hopes the parties find a way to work through the defaults, but nothing in the court's preliminary ruling or the confirmation of the plan can alter the terms of the lease. The preliminary hearing has given both parties an opportunity to review the lease and their responsibilities under it. For example, Ms. Mattoon may not make changes to the property without Open Doors' consent. Ms. Mattoon must maintain the property in a safe and sanitary manner. Ms. Mattoon must pay her plan payments and the trustee must remit the rental payments in a timely manner to prevent further post-petition defaults. On the other side, Open Doors has a duty to maintain the structure of the house in the condition in which it was tendered to the tenant under the lease. The testimony indicated that the air conditioner was working when

the property was leased and that the damage was not the tenant's fault. Open Doors may also need to repair the roof so that all of the rooms of the home may be utilized if the leaks started after September 1, 2019. Those may be expensive repairs that Open Doors is not prepared to make, and it may seek to terminate the month-to-month lease and release Ms. Mattoon from any further obligation under the lease.

The assumption of a lease pursuant to 11 U.S.C. § 365 requires the assumption of the lease with all of its "benefits and burdens." *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1226–7 (6th Cir. 1995). Confirmation of the Ms. Mattoon's plan will require proof that the defaults have been cured, or will be promptly, and proof that the Ms. Mattoon can perform in the future. Ms. Mattoon may choose to reject the lease, modify her plan and treat the pre-petition arrearages as an unsecured claim. The court will consider at the final hearing whether the adequate protection has been provided and the ability to cure the defaults and perform in the future has been shown. If not, the court will consider whether the stay should be modified to allow the notices of termination provided for in the lease to be given in the event of any future default without the need for further hearings.

### IV.    Order

It is accordingly ORDERED that:

1. The trustee shall pay to Open Doors the sum of $1,900 to be applied to the post-petition rent for May and June on or before June 15, 2022. The trustee shall also pay $950 by July 5, 2022, for the July rent if Ms. Mattoon makes the July plan payment.

2. Open Doors shall have until June 22, 2022, to request payment of post-petition rent as an administrative expense to be paid pro rata with all other post-petition priority administrative expenses accrued under 11 U.S.C. § 503(a)(1).

3. A final hearing on the Motion for Relief, any application for payment of an administrative expense, and confirmation of the plan is hereby be set for July 21, 2022, at 2:30 p.m. in Court Room A, 31 E. 11th St., Chattanooga, TN, 37402.

###